May it please the court. Good morning. My name is Ethan Ballo and today I speak for Jason Lee. I'll watch my clock. I'm going to do my best to reserve two minutes for rebuttal. I want to begin by discussing the 243.1 conviction, which this court must determine whether it categorically stands as a crime of violence under the career offender provision of the guidelines. Before you go there, I just want to ask you a preliminary question, and I'm not sure you and the government disagree on this. Was the guidelines sentencing range correctly calculated? No, it was not, Your Honor. And do you want, I guess I'll ask the government when they stand up, but by itself that would call for a remand, would it not? It would call for a remand, but we're not raising that as an independent issue. I think Judge Breyer, in effect, was clear in sort of a big picture way. He varied. But I'm not sure I understand you. You're not raising that as an independent issue? We're not asking for remand on that issue alone. If Judge Breyer... So if we determine that everything else that was correct, you're not asking for remand on that issue? No. If you determine that he's convicted of two crimes of violence, he'll accept a 10-year sentence that Judge Breyer imposed. Judge Breyer, and I think both me and government counsel have a fair amount of experience before him, was pretty clear. When the guidelines were miscalculated on the career offender, he was willing to go down to 10 years, which was a significant variance that Mr. Lee appreciated. And he indicated he was willing to actually grant our motion for over-representation of criminal history and consider a time-served sentence, but for the career offender finding. And my take and Mr. Lee's take on this case is the career offender finding drove him to think that 10 was the minimum he would give. If this court finds that he's not a career offender either because any of the three issues we've raised today is valid, I'm convinced that unless Mr. Lee has done something while incarcerated to cease earning Judge Breyer's respect, he's going to get out on remand. Okay. Your reasoning is interesting, but I want to make sure I understand your bottom line. You're not challenging the career guidelines calculation. I'm sorry, the guidelines calculation without respect to the other stuff. I think they were done erroneously, but in the absence of overturning the career offender finding, we won't seek a remand. Okay. Okay.  Okay. Okay. Okay. I'll answer that in two parts. First of all, if you agree that it's not categorically Judge Hurwitz, and I urge your colleagues to agree with Judge Hurwitz, then we apply the Begay test and we don't get to what Jonas and Dancy did because they're applying a different test. I understand. That was your first argument. Let's assume that we approach it by looking at the crime to see whether it's like the other crimes, like the enumerated crimes. Well, the Spencer's test was still required to hire an elements prompt test, so the test would still apply even under Spencer, the first part of Spencer. But as far as Jones, I think Jones and Dancy, I think Clarkton has the greater, the better response because, one, it has to be injury to another, and if someone in jail touches rudely a correctional officer, and remember this is county jail, unarmed officers. We're not talking about an armed police officer who might get his gun, who might shoot somebody, there might be a bystander. These are people in mental hospitals, in cells, in Sally ports, and so there can be no injury to another, even if you believe that there's going to be a confrontational response. But my third and dispositive answer— The other has to be the victim of the defendant's offense? Is that your view? Or a different person. It can't be the defendant. So the confrontational response is, I touch a police officer rudely, he jacks me, that's not risking injury to another, that's risking injury to me, and because of slight touching, that's not risking injury to the officer, because I'd be guilty of slight touching. But more importantly, this court has addressed definitively whether or not the government's confrontational response theory may be considered, and following the Supreme Court's case in Chambers, it said, and this is Flores Lopez, that the government's confrontational response theory is too speculative to be considered. That's a 16B case, though, right? Right. It starts a chain of events that could lead to physical injury of another. That's what Jonas said, the First Circuit said. Let me add, that's a lot packed in, and I'm going to try to answer your questions, see if I can move a little bit forward. One, Rule 16, the Supreme Court, in Section 16, did not have a problem in Big A in repeatedly citing to Leo Cal, a Rule 6 and 16 case, to help define a crime of violence. So the Supreme Court didn't see a distinction or a difference between what Rule 16 says, Section 16 says in its residual clause, there's a substantial risk that physical force against the person or property of the defendant. And we've said that in Gomez-Leon. And so I don't see that Section 16 gets away from Flores Lopez's observation that this court doesn't entertain that speculation. Two, you ask about Sykes. Sykes says, looks at the elements of the case and says, Intentionally fleeing in a car has high rates of speed, in and of itself causes a danger to the public, to bystanders, to others. It also, because of this fleeing, encourages and requires official response. That response is putting the general public at risk. That is categorically different than, again, the man in the Sally Port, the man in the mental hospital, the man in his cell. So Jonas says, well, once you show disrespect to the prison guard or the custodial officer, then he's going to have to show his authority. And then you start a sequence of events that will end with someone getting hurt. I mean, that was the analysis by the First Circuit. Exactly. And Carthorne and the Fourth Circuit and the Seventh Circuit, we think, have the better of the analysis. We don't think that's true. We cited every single 243.1 case that's ever been addressed by the California courts, and it's never happened. So how can it happen in the ordinary case? How is it inevitable in the ordinary case if it's yet to happen in any of the cases? I'm at two minutes. Unless your honors want to probe me further, I respectfully ask to reserve my next two minutes. Thank you, your honors. Good morning. May it please the Court. Lori Gray for the United States. Let me start with Judge Hurwitz's question with regard to the calculation of the sentencing guidelines. Defendants write in that the guidelines were calculated improperly, but that doesn't mean he prevails because it wasn't properly presented. Below, he didn't raise it with the district court. In fact, the probation PSR report had the guidelines calculated 360 to life, and he sent in at his sentencing memo objections to the pre-sentence report, but not to that. And I suppose if he were objecting to us, we would have to consider whether that was plain error. But he's not objecting to us. Exactly right. And under plain error, the government would argue that he would not show that his substantial rights were affected because the guidelines were not. I think we're saying you don't have to argue that because he's conceded, so maybe move on to the rest. Sure. Thanks. I'll start. Let me give you a starting point and see if you can help us in this. I think it's pretty clear that if you look at the elements of the two California offenses, they don't elementally require violence. A slight touching will work. So given that, tell us why you think these are crimes of – these are both violent. Certainly. And I'll start with 243.1 since that's where defendants started. It is not satisfied the first prong of the sentencing guidelines career offender, which is why we look at the second prong, the residual act. It is not burglary. It's not arson or extortion. So we look at the residual clause, and that tells us that it must be under the residual clause present a serious potential risk, a physical injury to another, that the elements of its crime. And in this case, Your Honor, I'd submit that 243.1 does, under California law, a battery as any willful and unlawful use of force or violence on another. That requires that the defendant actually intended to commit the act. It's purposeful conduct. The Laura case says that. In this case, the purposeful conduct is the norm because the defendant must know that the victim is a custodial officer. But, look, the elements of the crime require that he touch the other person on purpose and know he's a custodial officer. They also don't require that he touch him very hard. That's correct. And so my question is, given that what the elements of the crime are in this case, your contention that this has a potential of risk of violence to another must focus on the identity of the victim, does it not? That is one of the factors. What other factor would you focus on? Well, in considering the elements of the offense, Your Honor, under the residual clause, you look to see whether it's the type that would justify its inclusion within the residual provisions. But haven't we already held that simple battery in California is not a crime of violence? But this is not simple battery. No. What makes it not simple? What makes it not simple is that the defendant knows that it's a custodial officer acting within his duty. So it's the identity of the victim, is it not? That is one of the elements of this offense. What is it about the identity of the victim that makes this a crime of violence under the residual clause? Because when you look at the crime of violence under the residual clause, it's got to be the ordinary case, the ordinary case that there's a serious potential risk of physical injury. And in the ordinary case here, a custodial officer is duty-bound to respond. A custodial officer engaged in their duties is duty-bound to respond. With violence? Duty-bound to respond with violence? Duty-bound to respond with violence. It doesn't have to even be injury. That's not what the residual clause says. There can be no injury. We don't have any empirical data on what the ordinary case is, whether this is likely to result in violence. Opposing counsel says, well, there's a bunch of cases that he cited that don't show it resulted in violence, but that's not empirical data about what happens in the ordinary case. How are we supposed to determine what is likely to happen in the ordinary case? Well, in Spencer, this Court said that it's not required that every conceivable factual offense covered by a statute of conviction must necessarily fit into the sentencing enhancing category. Rather, the proper inquiry is whether the conduct encompassed by the elements in the ordinary case. So to your question of the question. Well, that's the question. Right. What's the answer? So in Sykes, the Court seems to just theorize. I don't know that they had any studies. They said, well, in the ordinary case, we think this could happen. And even in the burglary analysis, it seems to just be pulled out of the air by the justices about whether that has a potential for violence. So is that what we do? We pull it out of the air? No. And if so, where? Of course not. Well, I'd like to go back and put some form to that here from the James case in the Supreme Court. And in James, the case when they were analyzing the risk analysis, which is the second part of the ordinary case, they said the most relevant common attributes of the enumerated offenses, because you look at those to see whether it's similar in kind and degree of risk, the most relevant common attribute of the enumerated offenses of burglary, arson, extortion and explosive use is that all of those offenses, while not technically crimes against the person, nevertheless create significant risks of bodily injury or confrontation. With respect, you're telling us what the test is. We're asking you how we can apply that test in this case. If you look at those four crimes, the only one that's conceivably relevant seems to me is burglary. Arson, extortion don't really get me there in this one. So tell us why the risk created by this is so similar to the risk created by burglary. And fleeing felons, too. Sure. As James said with regard to burglary, it often creates the possibility of a violent confrontation. And in fact, in this case, it creates the possibility. But is possibility enough? What the cases seem to say is that you need a substantial risk. So why – how do we determine? There's always a possibility of violence, I suppose. The question is how do we determine whether this one falls on your side of the line or his side of the line? What test do we use? Well, the First, the Tenth and the Eleventh Circuit that considered this found that in fact the test, looking at the ordinary case, that they looked at the fact that prisons are inherently dangerous institutions, guards and inmates coexist in direct and intimate conduct. This is the Jonas case. And in Jonas, the Court found that – the Defendant raised the same argument there. He said the Defendant contends that unlike police officers, correctional officers are usually unarmed and interact informally with prisoners. The Jonas Court wrote, This contention rings hollow. The proper comparison in a degree of risk analysis is between the risk typical accompanying the offense of conviction and the risks enumerated. And not to be circular, what the Court did there is said, we have little difficulty in concluding that an assault and battery on a correctional officer typically presents a serious potential risk not only comparable to but arguably greater than the risks typically associated with the offense otherwise listed. Because by its nature and the setting matters. This is a tinderbox where the correctional officer is charged with maintaining law and order. And when there is a battery, they have got to respond. Whereas in a burglary, you might never run into anyone. There might never be a confrontation. Here, confrontation is guaranteed. Is the ordinary battery against a corrections officer one to which he must respond? I believe so, Your Honor. I believe that. Even the slightest toucher? Yes. You think the Fourth Circuit was entirely off base in finding to the contrary? I know you're reading to us from the opinion that goes your way, but I suppose you could have read to us from the opinion that goes the other way. No, and I will read to you from the opinion that goes the other way. You think the Fourth Circuit is wrong? I do think it's wrong. And the Fourth Circuit admitted that undoubtedly APBO and Virginia can be committed in a manner creating a risk of escalating violence. And even in less serious situations, law enforcement officers may be required to escalate their response to offending conduct to affect the seizure of the perpetrator. And James recognized this, Your Honors, because what James noted is that one can always hypothesize unusual cases in which even a prototypical violent crime might present a genuine risk, not present, a genuine risk of injury. And they give an example. They say to take an example from the enumerated crimes, one could imagine an extortion scheme where an anonymous blackmailer threatens to release embarrassing personal information about the victim unless he has mailed regular payments. The risk of physical injury to another approaches zero. But that does not mean that the offense of extortion is categorically nonviolent. And that's what I'm asking this Court to look to here in the ordinary case with a correctional officer engaged in their duties.  It's a custodial officer, right? Not a correctional officer. And I'd also like to make a point. In the brief, in the reply brief, defendant argues, well, they're not armed, so there can't be a problem. Below, he argued they were armed. Defendant's sentencing memo at CR 176, filed August 28th at page 13. He said, in custodial situations, the risk of injury is lessened because officers are armed, surrounded by other. What's the truth of it? Are the custodial officers in California armed or not armed? As I looked at that section that he cited, it indicates that a custodial officer shall have no right to carry or possess firearms. And then it says a custodial officer may use reasonable force to establish and maintain custody. So there doesn't need to be a gun for there to satisfy this particular code section. Let me ask you about this section 69. Yes. If section 16B should be interpreted the same way as the guidelines, and I think Gomez-Leon sort of suggests that, how can 69 be a crime of violence? 69 can be a crime of violence. We address categorically, but I think what the Court's asking me to do is talk about the modified category. Well, no, I think we said in Flores-Lopez that 69 is not a categorical crime of violence under 16B. Right, which is different. Right. So you think it can be under the residual clause? I do think it can. And again, the First Circuit found that in Almaness, cited in our brief, because in this particular case, it's different from Becerra, which the Defendant continually cites the first Becerra holding, but not the second, where there the plea was in the disjunctive, and it was unclear. Here the plea was in the conjunctive, so you can split it under de camp, go down and look what he pled to, and he pled to both the deterring and the ---- Isn't our law to the contrary on that? Doesn't our case law say that in the conjunctive we treat it as the disjunctive? We were pretty clear in our en banc decision of Young that if the conjunctive language distracts the statute, that doesn't help for a modified categorical analysis. But you can under de camp take a look, not to rescue, not to rescue a statute that's missing an element. But we still have to show, we would have to say that on the attempting to deter clause, where by means of a threat or violence met the residual clause. So is that your argument? Yes. You would have to take a look to whether the facts meet the elements of the offense. And once they do, then you flip, Your Honor, into the residual clause analysis, where you look at what in the ordinary case are the attendant risks that would cause this. Yeah, but the plea only allows us to conclude that he pled to a threat, not to violence. Well, the plea, because the defense counsel stipulated to the preliminary hearing, allows you to make sure that he pled to the elements of the separately charged offense. In this case, he did stipulate to the preliminary hearing. If I can ask one more question. I know we're over time. But is it your position that if we took the categorical approach and looked at Section 69, that a person who attempts by a threat to deter or prevent an offense, does that meet the residual clause? Yes. Both prongs. Okay. Both prongs, Your Honor. Well, you have to satisfy that prong as the judge could have suggested. Yes. And as the Court realizes, if you find on one of these, the defendant is still a career offender. And we would ask you to find. So find. Thank you, Your Honor. Thank you very much. I'm sorry to take over your time. Rebuttal time, please. Thank you. I'll be ambitious and try to make six quick points. We'll see how I do. Judge Hurwitz started with you saying the question, elementally, does 243.1 qualify? And I want to be clear. When you take a look at the Spencer test, it doesn't do away with the elements test of the fourth prong, the first prong of 4P1. No, I think we're all talking about the residual prong. But the residual clause still has an elements test. And it's by the elements of the crime. Does it categorically, in the ordinary case, create a serious potential risk of harm to another? As opposed to every case, which is the first prong. But we've got to look at the elements. So the elements of a rude touching of a correctional officer we say doesn't make it. And what we focused on between Your Honor's questions about Jonas' is the identity of the victim matter. So under Ortega-Gomez, if I batter an old woman, that's not a crime of violence. But if I commit a battering of a correctional officer, I am because he's wearing a star. And I respectfully ask the court to look at Loma Linda, look at the other cases we cited. The ordinary case often, including Mr. Lee's conviction, often involves someone behind bars. They're spitting through bars. They're throwing something from bars. That is an ordinary case, and that does not categorically cause risk to another. Under the elements, it doesn't survive. I'd also like to ask the courts to take a look at a case, I think this court decided on May 22nd, called Colon Areola. There was a different statute, 243C1. It's battery on a custodial officer that causes injury. And there's also, of course, 243, 245, and 245.3, which is batteries that cause serious bodily injury, have the risk of serious bodily injury. Those are crimes of violence. He's been charged with the lesser, and that's a difference with a distinction. Those would be crimes of violence under the in-every-case part. True. We don't need to look at those. What I call the elemental approach. Yeah, that would be the force clause, because both have an elemental approach. Regarding our response to Jonas, take a look. I think Judge Hill's response in Rozier is the better of the analysis. Officers are taught to have a continuum of force. They don't attack people because they can. There's a continuum of force. There's a Davis case where someone, a prisoner slaps the officer. What's the officer say? Don't do that. The prisoner slaps the officer again. Don't do that. Now he arrests him. This confrontational attack that risks others doesn't exist. On psychs, Your Honor, I would take a look closely at the opinion. I think they say it's not exclusively based on statistics, but the opinion does, in fact, rely on statistics to show how dangerous flight is, how many crashes there are, how many injuries there are, what a problem it's causing in America. So there is that basis to have the ordinary case, which is absent here. Are there any empirical studies in this case? No. The best study we can have is the one I presented in footnote five of our reply brief. I don't think there's a tinderbox theory here. The last thing I'll say, I know I'm over, too, and I appreciate the time. Just for section 69, one, I think Flores-Lopez ends the analysis. I think even under the modified categorical, it's now missing an element. So when Flores-Lopez permitted it, it's no longer permitted after discamps. But even if we could, defense counsel's stipulation of preliminary transcript that says there's a factual basis in there cannot unequivocally establish which of the two disjunctive prongs it went through. And because the standard is unequivocally established, they can never get home on that. I thank your honors for your patience. Thank you very much. We thank counsel for their presentation. The case of United States v. Jason Lee is submitted.
judges: BEA, IKUTA, HURWITZ